# COURT OF APPEALS OF VIRGINIA

## Record No. 0985-25-3

ISAIAH TRA HERN CHAPLIN
v.
COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Raphael and White

Argued at Lexington, Virginia

Opinion Issued July 14, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

M. Kevin Bailey (M. Kevin Bailey, PLLC, on brief), for appellant.

Sandra M. Workman, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General; Angelique Rogers, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## CHIEF JUDGE MARLA GRAFF DECKER

Isaiah Tra Hern Chaplin appeals his convictions for abduction and obstructing a call for emergency services in violation of Code §§ 18.2-47 and -164. He argues the evidence was insufficient to support his convictions. For the reasons that follow, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

In February 2021, Chaplin and his girlfriend, Courtney Ferguson, had a disagreement at a Walmart. As Chaplin yelled during a phone conversation, an embarrassed Ferguson walked away. While in the produce section, Chaplin approached her, lifted her by her shirt, and directed her to "stop playing" and "stop walking away from [him]." They left the store, but the argument continued in the car. Ferguson's mother was waiting at home with Ferguson's two children. After asking Ferguson if everything was "okay," Ferguson's mother offered to take the children elsewhere, and Ferguson agreed. Chaplin left shortly afterward, while Ferguson stayed home.

When Chaplin returned later, Ferguson suggested they temporarily end their relationship. Chaplin was angry and seized a knife from the kitchen. He held it to Ferguson's throat, leaving a mark on her neck. He eventually backed away but kept the knife. Ferguson slid her cell phone into the sofa hoping to keep it away from Chaplin. But as they continued to argue, Chaplin found her phone, put it in his pocket, and refused several requests to return it. Ferguson asked him to leave. Rather than doing so, Chaplin insisted that they would "work it out." Chaplin—still holding the knife—paced around the room, speaking to himself. Ferguson was stunned by his behavior. She cried and remained seated on the sofa.

Every time Ferguson moved, Chaplin made a cutting motion with the knife. Eventually, Chaplin announced it was time to sleep. He allowed Ferguson to use the bathroom but stood in the doorway as she did so. When she finished, Chaplin directed her to the bedroom and blocked the exit through the hallway. Afraid, Ferguson entered the bedroom. While the two were in the

_____

[2] "On appeal, [this Court views] the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). That principle requires the Court to "'discard' the defendant's evidence when it conflicts with the Commonwealth's evidence, 'regard as true all the credible evidence favorable to the Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Thomas v. Commonwealth*, 82 Va. App. 80, 93 (2024) (en banc) (quoting *Camann*, 79 Va. App. at 431).

bedroom, Chaplin continued to pace and talk to himself. He threatened to murder Ferguson and her children if she attempted to leave or call the police. Chaplin stabbed the bed and cut pillows by Ferguson's head. At another point, he pushed her down and cut her underpants off. Ferguson was unable to sleep and cried the entire night.

The next morning, Chaplin returned Ferguson's phone and instructed her to call her mother to help with laundry. Chaplin told Ferguson that they would "be fine" and "work this out." Ferguson texted her mother, informing her of Chaplin's behavior but asking her to behave normally when she arrived. Ferguson left with her mother and reported Chaplin's actions to police. Looking for evidence substantiating Ferguson's complaint, Detective Campbell of the Lynchburg Police Department searched the home. The detective found the knife blade and handle.

A grand jury indicted Chaplin for abduction and obstructing a call for emergency services. At his bench trial in December 2024, Ferguson testified about the events as outlined above, and the Commonwealth introduced photographs showing the mark on her neck. Initially, Ferguson could not provide an exact description of the knife. But when shown the knife seized by Detective Campbell, she identified it as the weapon Chaplin had wielded against her. Campbell testified that he searched the home and located a knife blade in a trash can and a knife handle on a dresser. He saw bedding and pillows with damage consistent with stabbing and slashing, as well as a pair of cut underwear. Detective Campbell also explained that he had reviewed video footage taken at Walmart. Campbell testified that although the video did not record a physical altercation between Chaplin and Ferguson, he did not know if he reviewed footage from the produce section where Ferguson had claimed Chaplin grabbed her.

Chaplin testified in his own defense, stating that he never touched Ferguson. Similarly, Chaplin maintained that he never wielded a knife or threatened her. Chaplin explained that

Ferguson was upset with him in Walmart for talking to his nephew on the phone. According to Chaplin, after they returned to the house, he apologized and left.

During his closing argument, Chaplin's counsel contended that the Commonwealth failed to prove the offenses because Ferguson was not a credible witness. The trial court found Ferguson's testimony credible and convicted Chaplin of abduction and obstructing a call for emergency services. Chaplin was sentenced to ten years and twelve months of incarceration, with six years and twelve months suspended.

ANALYSIS

This Court reviews Chaplin's challenge to the sufficiency of the evidence within a well-established legal framework. "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Mahoney*, ___ Va. ___, ___ (June 11, 2026) (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)). "This appellate inquiry begins with the presumption that the decision in the circuit court is correct and cannot 'be disturbed unless it is "plainly wrong or without evidence to support it."'" *Cuffee v. Commonwealth*, ___ Va. ___, ___ (Apr. 16, 2026) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). As a result, when "there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact.'" *Bennett v. Commonwealth*, 84 Va. App. 607, 619 (2025) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

"The only 'relevant question'" for this Court on review "'is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "An appellate

court may neither find facts nor draw inferences that favor the losing party that the factfinder did not." *Garrick*, 303 Va. at 182.

With these legal principles in mind, we turn to Chaplin's challenges to the sufficiency of the evidence.

### I. The Victim's Credibility

Chaplin contends that Ferguson was an inherently incredible witness because her "inconsistent knife descriptions" and "false claim of a Walmart assault" rendered her testimony unworthy of belief and incredible as a matter of law.

The reviewing court defers to the fact finder's "finding[s] of witnesses' credibility" unless the witness testimony is "'inherently incredible.'" *Sample v. Commonwealth*, 303 Va. 2, 16 (2024) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)). This standard presents an extremely high hurdle on appeal. "Witness testimony will not be found inherently incredible 'unless it is "so manifestly false that reasonable men ought not to believe it" or "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ."'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239-40 (2022) (quoting *Gerald*, 295 Va. at 487). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements. Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019).

Ferguson's credibility was an issue for the finder of fact to consider when weighing her testimony. Neither Ferguson's inability to give a detailed description of the knife until it was shown to her nor her recounting of the altercation in Walmart rendered her testimony inherently incredible. The trial took place more than three years after the incident. The passage of time provided a reasonable explanation for Ferguson's faded memory of the knife's appearance. And Ferguson was

- 5 -

able to readily identify the knife when she saw it. Regarding the Walmart incident, there was no legally significant contradictory evidence. Detective Campbell testified that the video footage from Walmart did not depict a physical altercation between Chaplin and Ferguson, but he also could not recall if the footage he reviewed recorded what happened in the produce section where the assault reportedly took place. To the extent that Ferguson's testimony contained inconsistencies, they did not as a matter of law "render [her] testimony unworthy of belief." *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006). Instead, the inconsistencies were a circumstance that the trial court "appropriately weighed as part of the entire issue of witness credibility." *Id.*

In exercising its role as the finder of fact, "the trial court . . . had the opportunity to listen to the testimony, observe the witnesses, consider the arguments of counsel, and determine what happened." *See Kelley*, 69 Va. App. at 627. The court credited Ferguson's account. This conclusion may not be overturned on appeal because her testimony was not, as a matter of law, "inherently incredible[] or so contrary to human experience as to render it unworthy of belief." *See Brown v. Commonwealth*, 75 Va. App. 388, 413 (2022) (quoting *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002)).

## II. Elements of the Offenses

Chaplin argues that the Commonwealth failed to prove certain elements of the abduction offense as required by Code § 18.2-47. A defendant is guilty of abduction if, "by force, intimidation[,] or deception, and without legal justification or excuse, [he] seizes, takes, transports, detains[,] or secretes another person with the intent to deprive such other person of [her] personal liberty." *Brown v. Commonwealth*, 74 Va. App. 721, 730 (2022) (quoting Code § 18.2-47(A)). Chaplin contends the evidence was not sufficient to support his abduction conviction because the Commonwealth did not prove that (1) he committed an asportation, (2) he intended to deprive Ferguson of her personal liberty, and (3) any unlawful detention he used was more than necessary to

commit the alleged underlying assault. *See generally Swezey v. Commonwealth*, 77 Va. App. 809, 815 (2023) (recognizing that a defendant can be convicted of abduction by detention and another offense involving the same restraint only if the restraint used in the two crimes is separate and distinct). Chaplin also argues the evidence did not support his conviction for obstructing a call for emergency services because the Commonwealth did not prove that Ferguson attempted to summon law enforcement. *See* Code § 18.2-164(A)(4), (B)(1).[3] He makes these challenges to the sufficiency of the evidence establishing the elements of the offenses for the first time on appeal.

As a preliminary matter, we consider whether these arguments are barred from merit review. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The issue "must be" raised in "both [a] specific and [a] timely" manner, "so that the trial judge would know the particular point being made in time to do something about it." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Id.* And "[m]aking one specific argument" regarding the sufficiency of the evidence "does not preserve a separate legal point on the same issue for [appellate] review." *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc), *aff'd by unpublished order*, No. 040019 (Va. Oct. 15, 2004)).

Chaplin made no arguments to the trial court about the specific elements of the offenses. He challenged only Ferguson's credibility. So his additional arguments raised for the first time on

---

[3] In pertinent part, the broad language of the statute prohibits "[w]illfully . . . prevent[ing], obstruct[ing], or delay[ing] by any means . . . the sending . . . of any authorized communication by or through any telephone . . . or wireless transmission device . . . with the intent to prevent another person from summoning law-enforcement." Code § 18.2-164(A)(4), (B)(1).

appeal are not preserved for appellate review. *See Peters v. Commonwealth*, 72 Va. App. 378, 389-90 (2020) (applying Rule 5A:18 to prevent appellate review of the sufficiency of the evidence proving one element of an offense even though the defendant adequately challenged the sufficiency of the evidence supporting a separate element).

Anticipating this conclusion, Chaplin asks this Court to consider his various new arguments under the ends-of-justice exception contained in Rule 5A:18. As is the case here, "when an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009). "It is never enough" for an appellant "to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

"The ends of justice exception is narrow and is to be used sparingly . . . ." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). To avail himself of the exception, Chaplin "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *See Cisneros v. Commonwealth*, 82 Va. App. 147, 171 (2024) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc)). "To demonstrate a miscarriage of justice, [an] appellant 'must show that either the conduct for which he was convicted is not a criminal offense or . . . the record affirmatively establishes that an element of the offense did not occur.'" *Jiddou v. Commonwealth*, 71 Va. App. 353, 374 (2019) (quoting *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 74 (2015)). "Merely claiming that the Commonwealth failed to prove an element of the offense will not constitute a miscarriage of justice." *Quyen Vinh Phan Le*, 65

Va. App. at 74.  Simply put, "[a]rguing that the record is devoid of evidence of an element does not equate with affirmative proof that an element did not occur." *Id.* at 75.

Chaplin contends that the Commonwealth failed to establish essential elements of the offenses of both abduction and obstructing a call for emergency services.  These arguments pertain to the degree of proof necessary to sustain his convictions.  But as the law makes clear, a failure of proof does not trigger application of the ends-of-justice exception contained in Rule 5A:18.  *See id.* at 75-76.  Only when the record affirmatively proves that the challenged element of the offense did not occur does the ends-of-justice exception apply.  *See Brittle*, 54 Va. App. at 514-15.  No such affirmative proof exists here.

For these reasons, Chaplin has not established a basis for invoking the ends-of-justice exception to excuse his failure to raise his sufficiency challenges to the elements of the offenses in the trial court.

CONCLUSION

The record does not support Chaplin's argument that Ferguson was an inherently incredible witness.  Further, at trial, Chaplin's counsel failed to challenge the sufficiency of the evidence supporting the elements of his offenses.  And the record does not provide a basis for applying the ends-of-justice exception to permit this Court to consider these arguments.  For these reasons, we affirm the convictions.

*Affirmed.*